PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSTANTINE MURRELL,

        Plaintiff,

   -v-

WILLIAM A. SHERON, JR., Sheriff, in his
individual capacity; WILLIAM ZIPFEL,
Superintendent, in his individual capacity;
TERESE BRYAN, Nurse, in her individual
capacity; HENRY MOSCICKI, Nurse
Administrator, in his individual capacity;
UNITED MEMORIAL MEDICAL
CENTER; and ROCHESTER NEURO
SPINE CENTER,[1]

        Defendants.
_____

**DECISION AND ORDER**

21-CV-6576-EAW

*Pro se* plaintiff Constantine Murrell ("Plaintiff"), a prisoner currently confined at the

Attica Correctional Facility ("Attica") filed this action seeking relief under 42 U.S.C. § 1983

alleging that his rights under the Eighth and Fourteenth Amendments to the United States

Constitution were violated when he slipped and fell in the shower area at the Genesee

County Jail (the "Jail") and was denied adequate medical treatment for his injury by the

Jail's medical staff—Nurse Terese Bryan ("Bryan") and Nurse Practitioner Henry Moscicki

_____

[1]     The Clerk of Court is directed to amend the caption of this action as set forth herein.
Defendant Terese Bryan, who was sued only as "Teressa-Nurse," was identified by the
Genesee County Attorney's Office pursuant to the Court's initial Screening Order (Dkt. 15
at 16-17), directing it to identify this individual.

     Plaintiff names "Henry Moscick" in the complaint. (*See* Dkt. 1 at 1). However,
Plaintiff spells this individual's last name consistently as "Moscicki" throughout the
amended complaint. (Dkt. 17 ). Accordingly, the Court adopts the spelling used in the
amended complaint in this Decision and Order, and directs the Clerk of Court to so amend
the caption.

("Moscicki")—and two outside medical providers—United Memorial Medical Center ("UMMC") and Rochester Neuro Spine Center (the "Spine Center"). The Court presumed Plaintiff was a pretrial detainee at the time of his fall and medical treatment and construed his claims as arising under the Due Process Clause of the Fourteenth Amendment. (Dkt. 15 at 7 (citing *Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017))).

The Court previously granted Plaintiff permission to proceed *in forma pauperis* and screened the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (Dkt. 15 (the "Screening Order")). The Court (1) dismissed with prejudice Plaintiff's claims against the individual defendants in their official capacities (*id.* at 2); (2) concluded that Plaintiff's Fourteenth Amendment deliberate indifference claim against Bryan and Moscicki alleging a failure to re-examine and treat Plaintiff were sufficient to proceed to service (*id.* at 14-15); and (3) directed that if Plaintiff did not file an amended complaint as directed the following claims would be dismissed with prejudice because they failed to state claims upon which relief can be granted: (a) the conditions-of-confinement claim against defendant Sheriff William Sheron ("Sheron") for failing to secure a safe shower area (*id.* at 8-10); (b) the deliberate indifference claim against Sheron, Bryan, Moscicki, UMMC, and the Spine Center alleging a failure to properly diagnose Plaintiff's back injury initially (*id.* at 10-13); and (c) the deliberate indifference claim against Sheron alleging a failure to treat Plaintiff's injury and pain (*id.* at 15-16). Plaintiff timely filed an amended complaint (Dkt. 17), and the Court again screens it under the 28 U.S.C. §§ 1915(e)(2)(B) and 1915A criteria. Plaintiff has also filed a motion seeking miscellaneous relief and appointment of counsel. (Dkt. 21). Plaintiff's request for miscellaneous relief is denied, and Plaintiff's request for appointment of counsel is denied without prejudice.

2

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a Court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted).  But leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.   AMENDED COMPLAINT

In evaluating a complaint or amended complaint, the Court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*,

3

dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

Plaintiff sues Sheron, Bryan, Moscicki, UMMC, the Spine Center, and Jail Superintendent Zipfel ("Zipfel") (collectively "Defendants") alleging violations of his rights under the Eighth and Fourteenth Amendments. While Plaintiff was directed to state specifically in the amended complaint whether he was a pretrial detainee or convicted prisoner at the time of the events giving rise to this action for purposes of construing his claims as arising under either the Eighth or Fourteenth Amendments (Dkt. 15 at 7 n.4), he does not do so. However, his amended complaint focuses on the Fourteenth Amendment's Due Process Clause. (Dkt. 17 at 8-10). Accordingly, the Court again construes Plaintiff's claim as arising under the Fourteenth Amendment.

The amended complaint's factual allegations do not differ substantively from those asserted in the complaint. Rather the amended complaint attempts to argue that his allegations do, in fact, plausibly allege claims under the Due Process Clause. Plaintiff alleges that on November 1, 2018, he slipped and fell in the Jail's shower area and injured his spine. (*Id.* at 4). He reported his injury to Bryan and Moscicki because he was unable to move without medical assistance. (*Id.*). Plaintiff was sent to UMMC, where, Plaintiff alleges, his injury was undiagnosed, or misdiagnosed as mild swelling, and he was returned to the Jail. (*Id.*). After he returned from UMMC, he made numerous complaints

about severe pain and his inability to move and was re-examined by Bryan and Moscicki, who reiterated the diagnosis provided at UMMC—"there was nothing wrong except for a little swelling." (*Id.*).  Plaintiff continued to complain and suffer from severe pain and an inability to move from his bed until he was sent to the Spine Center.  (*Id.* at 4, 8).  The Spine Center examined Plaintiff and told him there was nothing wrong except a "small amount of swelling." (*Id.* at 4).  Plaintiff alleges that his pain and inability to move from his bed continued and he was again sent to the Spine Center, where on February 15, 2019, he was re-examined by the "Chief Medical Spine Doctor" ("Spine Doctor"), who determined that Plaintiff had suffered a "broken tail bone and spine." (*Id.*; *see also id.* at 12) ("non-healing tail bone fracture").  Upon diagnosing Plaintiff's injury, the Spine Doctor ordered a "pain management shot" and informed Plaintiff that if the shot did not alleviate the pain, he would recommend surgery to "remove the tailbone." (*Id.* at 4).  The Jail's medical department "stopped the pain management treatment through [the Spine Center]" once the Spine Center diagnosed his injury and "put the treatment back on [UMMC][] for the pain management shot." (*Id.* at 4-5).  Plaintiff did not receive the shot until June 11, 2019; almost seven months after the injury and four months after it was prescribed by the Spine Center.  (*Id.* at 5).  Plaintiff alleges that both UMMC and the Jail's medical department knew of Plaintiff's re-diagnosed injury and treatment plan, but he was not given the shot until four months later.  (*Id.* at 5, 7, 9).

Plaintiff alleges violations of the Fourteenth Amendment based on (1) the lack of rubber mats and safety bars in the shower area at the Jail (*id.* at 6, 9); (2) Defendants' failure to properly diagnose Plaintiff's injury (*id.* at 5, 7-8); (3) Bryan and Moscicki's refusal to re-examine Plaintiff despite his continued complaints of pain and inability to ambulate,

and to continue with UMMC's initial misdiagnosis (*id.* at 9, 11); and (4) the Jail's medical staff and UMMC's failure to provide Plaintiff with pain management for almost four months after it was ordered by the Spine Center (*id.* at 5-6, 7, 11).

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability [under § 1983].  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

### 1.  Failure to Provide a Safe Environment

Plaintiff alleges that Sheron "was aware of the lack of rubber mats and safety bars in the shower area" and was "grossly negligent" "in maintaining and supervising the jail . . . ." (Dkt. 17 at 6).  The Court construes this claim as a conditions-of-confinement claim under the Fourteenth Amendment.

> "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the [defendants] acted with deliberate indifference to the challenged conditions."  This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Darnell*, 849 F.3d at 29 (internal citations omitted).

Under the objective prong, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Gordon v. Drummond*, 19 Civ. 8405 (GBD) (GWG), 2021 WL 5314604, at * 7 (S.D.N.Y. Nov. 16, 2021) (applying *Farmer's* objectively serious risk of harm standard to pretrial detainee's conditions-of-confinement claim).  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency."  *Darnell*, 849 F.3d at 30.[2]

To meet the subjective prong, a plaintiff must show that the defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the

---

[2]    For both the Eighth and Fourteenth Amendment, the objective prong follows the same standard.  *Darnell*, 849 F.3d at 32.

defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. "In other words, under the Fourteenth Amendment the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.* "Although *mens rea* is assessed from an objective perspective, as opposed to the more demanding subjective recklessness standard employed in the Eighth Amendment context, negligence is still insufficient to give rise to a valid claim under the Fourteenth Amendment." *Smith v. Outlaw,* No. 15-CV-9961 (RA), 2017 WL 4417699, at *3 (S.D.N.Y. Sept. 30, 2017) (citation omitted and emphasis in original); *see also Kingsley v. Hendrickson,* 576 U.S. 389, 396 (2015) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." (emphasis in original)).

Further, to impose liability on an individual under § 1983, the defendant must have been personally involved in the alleged constitutional violation. Simply holding a supervisory position is not sufficient to establish liability. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Thus, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti*, 983 F.3d at 620.

The Court found initially that Plaintiff (1) failed to plausibly allege both the objective and subjective (*mens rea*) prongs of a due process violation regarding his slip-and-fall at the Jail, and (2) even if he had plausibly alleged those two prongs, he did not allege that Sheron was personally involved in the alleged due process violation. (Dkt. 15 at 9). The Court concluded that "[a]t most, Plaintiff allege[d] that Sheron was negligent in not ensuring that safety bars or mats were installed in the shower area at the Jail." (*Id.*). The

amended complaint does not allege any additional facts to alter this conclusion.  Plaintiff

alleges only that the lack of rubber mats and safety bars "related to the plaintiff slipped

and fell [sic] coming out of the shower" and that Sheron failed "to secure safety equipment

within the shower area . . . ."  (*Id.* at 17 at 6, 9).  This fails to plausibly allege that the lack

of rubber mats and safety bars posed an unreasonable risk of harm to Plaintiff's health or

safety and that Sheron knew of or should have known of that risk.   The amended

complaint, again, at most alleges negligence, which does not state a constitutional

violation.  *See Seymore v. Dep't of Corr. Servs.*, No. 11 Civ. 2254(JGK), 2014 WL 641428,

at *4 (S.D.N.Y. Feb. 18, 2014) (dismissing § 1983 claim where inmate complained of

unsafe living conditions caused by the improper use of bathroom floor, failure to repair

cracks in the floor, failure to address leaks, and provision of unsuitable footwear because

the allegations "amount[ed] to nothing more than negligence") (collecting cases)); *see*

*also Kingsley,* 576 U.S. at 396 ("[L]iability for *negligently* inflicted harm is categorically

beneath the threshold of constitutional due process.") (emphasis in original); *Jackson v.*

*Sullivan Cnty.*, 16-CV-3673(JCM), 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27, 2018)

(allegations of negligence are insufficient to establish the *mens rea* prong).   Plaintiff's

status as a pretrial detainee does not transform a state law tort claim into a constitutional

violation actionable under § 1983.

Further, Plaintiff seeks to impose liability on Sheron solely in his role as Sheriff

responsible for supervision of the Jail.  (Dkt. 17 at 6 (alleging "gross negligence on the

part of the Sheriff in maintaining and supervising the jail")).  "[P]roof of linkage in the prison

chain of command is insufficient" to establish liability under § 1983.  *Hernandez*, 341 F.3d

at 144.  Plaintiff's allegation that Sheron "was aware" of the lack of safety measures is

conclusory and unsupported by any factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim will have "facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added).   Accordingly, this claim is dismissed with prejudice.

### 2.  Inadequate Medical Care and Treatment

Plaintiff again alleges that Bryan, Moscicki, UMMC, and the Spine Center misdiagnosed his spine injury and that, despite at least six months of repeated complaints of severe pain and an inability to move, Bryan, Moscicki, and Zipfel failed to re-examine him and have him returned to the Spine Center until he threatened to sue.  (Dkt. 17 at 4-5, 7-9).  The amended complaint also alleges that after Plaintiff was finally diagnosed with a broken tail bone and prescribed a pain management shot, the Jail's medical staff, including Bryan, Moscicki, Zipfel, and UMMC failed to provide him with a shot for four months.  (*Id.* at 4-7, 9).  This claim, too, is analyzed under the Fourteenth Amendment's Due Process Clause, which "protects pretrial detainees from inadequate medical care. . . ."  *Moran v. Livingston*, 155 F. Supp. 3d 278, 287 (W.D.N.Y. 2016) (internal quotations omitted).

To allege a deliberate indifference claim based on inadequate medical care or treatment, Plaintiff must, like the conditions-of-confinement claim, satisfy a two-pronged test:  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Lloyd v. City of N.Y.*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)).  Second,

the defendant must act with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted)); *see also Lawrence v. Evans*, 136 F. Supp. 3d 486, 489 (W.D.N.Y. 2015) ("An objectively 'serious medical need' is one which presents 'a condition of urgency' that may result in 'death, degeneration, or extreme pain.'"), *aff'd*, 669 F. App'x 27 (2d Cir. 2016) (summary order).

Second, Plaintiff must allege that Defendants acted with a sufficiently culpable state of mind by recklessly failing to act with reasonable care to mitigate the risk to him even though they knew, or should have known, that their failure to act posed an excessive risk to Plaintiff's health. *See Darnell*, 849 F.3d at 35.

The Court construes Plaintiff's claims as alleging that (a) Bryan, Moscicki, UMMC, and the Spine Center failed to correctly diagnose Plaintiff's injury; (b) Bryan, Moscicki, and Zipfel failed to adequately re-examine and treat Plaintiff after several months of Plaintiff's constant complaints of severe pain and an inability to move from his bed; and (c) the Jail's medical department, including Bryan, Moscicki, Zipfel, and UMMC waited four months to provide Plaintiff with a pain shot.[3] (Dkt. 17 at 4-7, 9 ("Moscicki and [Bryan] refused to re-examine the [P]laintiff's back . . . even after . . . [the Spine Center] re-diagnosed the [P]laintiff ordering treatment")).

---

[3] The Court initially construed the complaint as alleging these same claims, except that Zipfel was not named as a defendant and the claim alleging the failure to provide a pain management shot was not alleged in the complaint. (Dkt. 15 at 11).

### a. Claims against UMMC and the Spine Center

The Court initially found that the complaint did not plausibly allege facts from which the Court could reasonably infer, at the screening stage, both that UMMC and the Spine Center were persons acting under color of law for purposes of § 1983, and that the alleged constitutional violations occurred pursuant to a policy or custom of UMMC and the Spine Center.  (Dkt. 15 at 11-12).  The amended complaint does not correct this pleading deficiency.  As stated in the Screening Order, "[b]ecause UMMC and the Spine Center are private employers, in order to state a claim against [them] under § 1983, Plaintiff must allege that UMMC and the Spine Center, 'were state actors, acting in concert with state actors, or serving as an instrumentality of the state.'"  (Dkt. 15 at 11-12 (quoting *Mallegren v. Burkholder*, Nos. 14-CV-2188 (MKB), 14-CV-2735 (MKB), 14-CV-2189 (MKB), 14-CV-2736 (MKB), 14-CV-2709 (MKB), 14-CV-3635 (MKB), 2014 WL 3845223, at *6 (E.D.N.Y. Aug. 5, 2014) (collecting cases))).  The only allegations to support a claim against UMMC and the Spine Center are that these private actors "act[ed] in concert with state actors," or "serv[ed] as an instrumentality of the State."  (Dkt. 17 at 9, 10).  These allegations are wholly conclusory and do not support a plausible claim that UMMC and the Spine Center were acting under color of state law.  See *Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) (dismissing claim against a non-state actor because claims that private actor conspired with a state actor were too conclusory; explaining that "[a]n otherwise invalid [Section] 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'") (alterations in original) (quotation marks omitted) (quoting *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 546 (E.D.N.Y. 2004)).

Additionally, the amended complaint does not plausibly allege that UMMC's and the Spine Center's alleged failure to diagnose Plaintiff's injury and that UMMC's failure to give Plaintiff a pain management shot for four months occurred pursuant to a policy or custom of either UMMC or the Spine Center.  *See Monell v Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  The doctrine of *respondeat superior* does not apply to claims under § 1983.  *Id.* at 691; *Vega v. Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006) ("Private employers are not liable under section 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort." (internal quotation marks omitted)). Accordingly, Plaintiff fails to state a § 1983 claim against UMMC and the Spine Center, and the § 1983 claims against these Defendants are dismissed with prejudice.

### b.  Failure to Correctly Diagnose Plaintiff's Injury

The Court initially found that Plaintiff's allegations that Defendants failed to correctly diagnose his injury "allege[d], at most, medical malpractice, which does not give rise to a claim under § 1983."  (Dkt. 15 at 12 (citations omitted)).  The Court concluded that Plaintiff "allege[d] only that Defendants failed to properly diagnose his broken tail bone and spine when they first examined him [and that] [h]e [did] not plausibly allege that the Defendants acted recklessly when they examined him nor what they did or did not do after their initial examinations of him."  (*Id.* at 13 (citing *Sanders v. Laplante*, 3:19-cv-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) ("[T]he applicable standard is akin to civil recklessness, and does not require the defendant to be subjectively aware of the harm resulting from her acts or omissions."))).

The amended complaint does not correct these pleading deficiencies, and like the complaint, does not plausibly allege that the Defendants acted recklessly when they examined Plaintiff initially and failed to diagnose a broken tail bone.  The fact that Plaintiff was later diagnosed with a non-healing fractured tail bone does not transform the Defendant's initial misdiagnosis, which, at most, alleges medical malpractice, to deliberate indifference, even when defined objectively.  *See Sanders*, 2019 WL 5538118, at *3 ("[E]ven after *Darnell*, it is well-settled that 'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.'" (quoting *Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012); *see also Darnell*, 849 F.3d at 35 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence").    Plaintiff's conclusory and factually unsupported allegation that the Defendants "refused to adequately treat and care for [him], due to the fact that [he] was an inmate and his ethnicity,"[4] (Dkt. at 17 at 7), does not alter the Court's conclusion that the amended complaint fails to state a claim based on the Defendants' alleged misdiagnosis of his injury.  Accordingly, Plaintiff's § 1983 claim based on a failure to correctly diagnose his injury is dismissed with prejudice.

### c.  Failure to Treat Plaintiff's Injury and Pain

Plaintiff alleges that Sheron, Zipfel, Bryan, and Moscicki "allowed him to suffer after he returned from UMMC knowing that [he] could not walk, sit or lay in bed without being in severe pain, and again to suffer in pain once the Doctor from [the Spine Center] sent

---

[4]    Plaintiff's reference to his ethnicity does not transform his due process deliberate indifference claim to an Equal Protection claim, and the Court does not construe this lone reference to "ethnicity" as alleging a claim under the Fourteenth Amendment's Equal Protection Clause.  Moreover, Plaintiff does not allege what conduct, if any, constituted the ethnicity-based discrimination to which he refers in the amended complaint.

orders for [Plaintiff] to receive a pain management shot to try to stop the pain." (Dkt. 17 at 8; *see also id.* at 9 (alleging that Moscicki and Bryan refused to re-examine the Plaintiff's back, continued to rely on UMMC's initial misdiagnoses and failed to provide Plaintiff with a pain shot after it was ordered)). The Court initially found that Plaintiff's claim against Bryan and Moscicki related to their failure to re-examine and treat his pain before he was diagnosed with a broken tail bone could proceed to service but that any purported claim against Sheron failed to allege that Sheron was personally involved in that denial of treatment. (Dkt. 15 at 14-15). Plaintiff was granted leave to re-allege this claim against Sheron.

The amended complaint, in addition to re-alleging that Bryan and Moscicki failed to re-examine and treat Plaintiff prior to the re-diagnosis of Plaintiff's injury (Dkt. 17 at 9), alleges (i) that Sheron and Zipfel, in their roles as sheriff and superintendent, respectively, failed to treat Plaintiff's complaints of severe pain and an inability to move from his bed without severe pain (*id.* at 8-9), and (ii) that Sheron, Zipfel, Bryan, Moscicki, and UMMC failed to provide Plaintiff with a pain management shot for four months after it was prescribed by the Spine Center (*id.* at 4-5, 8-9). The Court addresses each allegation separately.

(i)   *Sheron's and Zipfel's personal involvement*

As addressed above, the theory of *respondeat superior* is not available in a § 1983 action, *Hernandez*, 341 F.3d at 144, and "[t]o hold a [prison] official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional claim directly against the official[,]" *Tangreti*, 983 F.3d at 620. The amended complaint does not set forth facts plausibly alleging that either Sheron or Zipfel personally "acted intentionally to

impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  Plaintiff alleges that Sheron was "grossly negligent" when he failed to maintain and supervise the Jail and that Zipfel was "grossly negligent in supervising [His] subordinates."  (Dkt. 17 at 8-9 (quotation marks omitted) (bracketed material in original)).  This language supports only a claim that Sheron and Zipfel failed to supervise Bryan and Moscicki or other medical staff and should be liable based on a theory of *respondeat superior*, which does not support a § 1983 claim.  *See Tangreti*, 989 F.3d at 618 ("there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)).

Further, Plaintiff's allegation that he filed "multiple grievances and complaints" does not plausibly allege the personal involvement of Sheron and Zipfel.  Courts in the Second Circuit repeatedly have dismissed claims based on an asserted notification to a supervisory official of an alleged wrong by way of a letter, grievance, or appeal of a disciplinary action. *See*, *e.g.*, *Smart v. Annucci*, No. 19-CV-7908 (CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (dismissing *pro se* complaint alleging defendants, both high-ranking prison officials who were alleged to have failed to act on the plaintiff's complaints, because such allegations did not support an inference that the defendants, through their own individual actions, violated the Constitution, stating "[f]ailing to correct another officer's violation does not suffice" to establish a supervisor's direct violation of a plaintiff's constitutional rights); *see also McCrary v. Marks*, 836 F. App'x 73, 74 (2d Cir.

16

2021) (summary order) (holding the plaintiff's allegation that a supervisory official received the plaintiff's letter complaining of a violation of the plaintiff's First Amendment right to judicial documents was insufficient to state a claim against the supervisory official); *Logan v. Graham*, 9:18-CV-0291 (ML), 2021 WL 4440344, at *5 (N.D.N.Y. Sept. 28, 2021) (dismissing claim against defendant superintendent where sole basis for his personal involvement was that, after receiving plaintiff's grievance, he failed to remedy a subordinate's wrong) (collecting cases).

Accordingly, Plaintiff's claim that Sheron and Zipfel failed to adequately treat his pain and injury prior to the re-diagnosis of the injury is dismissed with prejudice.

(ii) *Failure to provide Plaintiff with a pain management shot*

Plaintiff alleges that after his injury was correctly diagnosed on February 15, 2019, and the Spine Center prescribed a shot to treat his pain, the Jail's "medical department" "stopped the treatment through the [Spine Center]," "put the treatment back on [UMMC]," for the pain management shot," and "waited" almost four months before ensuring that Plaintiff received a shot.  (Dkt. 17 at 4-5; *see also id.* at 7 (alleging that, "[o]nce the plaintiff was diagnosed properly. . . the [Jail's] Medical Department, and UMMC made the plaintiff wait in pain for months for the pain management shot"), 11 (alleging that Plaintiff waited four months until UMMC and "County officials" gave him a shot)).  He also alleges that Zipfel was "grossly negligent in supervising [His] subordinates" (*id.* at 5 (brackets in original)), that Zipfel's "failure to supervise resulted" in the delay in receiving the shot (*id.* at 12), and that Bryan and Moscicki failed to ensure that Plaintiff received a shot after they became aware that it had been ordered by the Spine Center (*id.* at 12-13).

At this stage of the litigation and mindful of the Second Circuit's directives that *pro se* pleadings must be construed liberally, the Court finds that the deliberate indifference claim against Bryan and Moscicki based on their failure to ensure that Plaintiff received a pain management shot for four months after it was ordered while Plaintiff continued to suffer from severe pain may proceed to service. This same claim against UMMC and Zipfel must be dismissed because, as discussed above, Plaintiff has not plausibly alleged that UMMC was acting under color of law, and Plaintiff has not plausibly alleged that Zipfel was personally involved in the alleged deliberate indifference to Plaintiff's injury and pain.

## III.    MOTION TO APPOINT COUNSEL AND FOR MISCELLANEOUS RELIEF

Plaintiff submitted a motion to amend the amended complaint to notify the Court that Plaintiff has a pending action in the New York State Court of Claims ("Court of Claims"), requesting that this Court "take over" that action, and stating Plaintiff is "in need of proper representation." (Dkt. 21). The Court construes Plaintiff's motion as a motion to appoint counsel and for miscellaneous relief. For the following reason the Court denies Plaintiff's request to appoint counsel without prejudice and denies Plaintiff's request for miscellaneous relief.

In deciding whether to appoint counsel, the Court should first determine whether the indigent's position seems likely to be of substance, and if the claim meets this threshold requirement, the Court should then consider a number of other factors in making its determination. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). This action was only recently commenced. Defendants have not yet responded to the allegations contained in the amended complaint. The only facts upon which this Court may base its decision as to whether this lawsuit is of substance are those portions of

Plaintiff's amended complaint that the Court has permitted to proceed to service.  Thus, at this stage, the Court lacks sufficient information to consider the factors set forth in *Hodge*.  Accordingly, Plaintiff's motion for appointment of counsel is denied without prejudice as premature.

This Court is unable to grant Plaintiff's motion for miscellaneous relief because it lacks the authority to intervene in the Court of Claims action.  Plaintiff requests that this Court "take over" the action that Plaintiff initiated in the Court of Claims because Attica is taking money from his inmate account to cover court fees, including copies of discovery material.  (Dkt. 21 at 1).  Generally, "under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts."  *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (quoting *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir.1975)) (collecting cases).  The Supreme Court's holding in *Younger v. Harris*, 401 U.S. 37 (1971) "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings[,]" *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002), except upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief[,]"  *Younger*, 401 U.S. at 54.

Here, although Plaintiff complains of court fees being removed from his inmate account, this does not constitute an unusual circumstance that would warrant the extraordinary remedy of federal court intervention.  Moreover, no facts presented implicate rights protected by the United States Constitution or any federal law.  *See McGowan*, 282 F.3d at 197.  With his motion, Plaintiff submitted a document that appears to be a decision and order issued in the Court of Claims matter.  (Dkt. 21 at 2-4).  In that

decision and order, the Court of Claims characterizes Plaintiff's claims as "medical negligence and/or malpractice while incarcerated at Attica in February of 2022." (*Id.* at 3). Negligence and medical malpractice are state law claims that do not arise under the United States Constitution or any federal law. *See* 28 U.S.C. §1331; *Moore v. Brooklyn Hosp. Ctr.*, 22-CV-04208 (KAM), 2022 WL 16798230, at *2 (E.D.N.Y. Nov. 8, 2022) ("Plaintiffs' claims for negligence and medical malpractice arise under state law, not federal law."). Accordingly, there is no basis for the Court to intervene in that matter— assuming it had the power to do so.

For these reasons, Plaintiff's request for miscellaneous relief is denied.

## CONCLUSION

For the reasons set forth above, the following claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1): (1) the conditions-of-confinement claim against Sheron; (2) the deliberate indifference claim alleging a failure to correctly diagnose Plaintiff's injury initially against all Defendants; (3) the deliberate indifference claim alleging a failure to treat Plaintiff's injury and pain against Sheron, Zipfel, UMMC, and the Spine Center; and (4) the deliberate indifference claim against Zipfel and UMMC alleging a failure to provide Plaintiff with a pain shot after his injury was re-diagnosed as an unhealing tail bone fracture and a pain shot was ordered. The deliberate indifference claims against Moscicki and Bryan alleging that they failed to re-examine and treat Plaintiff's injury and pain after his injury was misdiagnosed initially and that they failed to ensure that he receive a pain shot after his injury was re-diagnosed as a tail bone fracture and pain management was ordered may proceed to service. Plaintiff's request to appoint

counsel is denied without prejudice and request for miscellaneous relief is denied.  (Dkt. 21).

## ORDER

In light of the foregoing,

IT IS HEREBY ORDERED that the following claims are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because they fail to state claims upon which relief can be granted: (1) the conditions-of-confinement claim against Sheron; (2) the deliberate indifference claim alleging a failure to correctly diagnose Plaintiff's injury initially against all Defendants; (3) the deliberate indifference claim alleging a failure to treat Plaintiff's injury and pain against Sheron, Zipfel, UMMC, and the Spine Center; and (4) the deliberate indifference claim against Zipfel and UMMC alleging a failure to provide Plaintiff with a pain shot after his injury was re-diagnosed as an unhealing tail bone fracture and a pain shot was ordered; and it is further

ORDERED that the Clerk of Court shall terminate William A. Sheron, Jr., United Memorial Medical Center, Rochester Neuro Spine Center, and William Zipfel as parties to this action; and it is further

ORDERED that the Clerk of Court shall cause the United States Marshals Service to serve the summons and amended complaint on Moscicki and Bryan at the Genesee County Jail related to the allegations that Moscicki and Bryan failed to re-examine and treat Plaintiff's injury and pain after his injury was misdiagnosed and that they failed to ensure that he receive a pain shot after his injury was re-diagnosed as an unhealing tail bone fracture and pain management was ordered, without Plaintiff's payment thereof,

unpaid fees to be recoverable if this action terminates by Plaintiff's recover; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g)(2), Moscicki and Bryan are directed to answer the amended complaint; and it further

ORDERED that Plaintiff's request to appoint counsel is denied without prejudice and request for miscellaneous relief (Dkt. 21) is denied; and it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes. The Court may dismiss the action if Plaintiff fails to do so.

SO ORDERED.

_____
Elizabeth A. Wolford
Chief Judge
United States District Court

DATED: February 13, 2023
      Rochester, New York